[Civ. No. 21018.   Second Dist., Div. One.   Jan. 24, 1956.]

BETTE J. OWENS, Respondent, v. WHITE MEMORIAL
HOSPITAL (a Corporation) et al., Defendants; THE
COLLEGE OF MEDICAL EVANGELIST (a Corpo-
ration), Appellant.

Dryden, Harrington, Horgan & Swartz for Appellant.

Joseph A. Kean for Respondent.

FOURT, J.—This action is one in which the plaintiff sought damages for personal injuries sustained when a side rail of one of defendant's hospital beds dropped onto her right foot after she had pressed the release pedal with that foot to lower the side rail of the bed.

The jury returned a verdict in favor of the plaintiff for the sum of ten thousand ($10,000) dollars and defendant, The College of Medical Evangelist, a corporation, has appealed.

The facts most favorable to the plaintiff are as follows: The plaintiffs' daughter, aged about 2 years and 9 months, had been admitted to the hospital as a patient for an appendectomy. The child was placed in a bed in a ward of the hospital; at that time the metal side rail of the bed was in a "halfway" position. The nurse thereafter raised the side rail to an "up" position, at which time the side rail was about 4 feet above the floor. The baby was crying and the nurse who had placed her in the bed asked the plaintiff to calm the child, to the end that the doctor could come in and take a blood test. The nurse thereupon left the room. The plaintiff had never been given any orders not to take the child from the bed. The plaintiff, being about 4 feet, 11 inches in height, could not reach the infant by reaching over the top rail of the bed. Plaintiff then touched the lever and release pedal controlling the movement of the side rail of the bed with her right foot, with the intention of lowering the side rail in order to reach and calm the child. Upon

touching the lever with her right foot the whole side of the metal bed dropped suddenly and hard, and hit the top of her right foot. Shortly thereafter plaintiff fainted. The only knowledge the plaintiff had as to why the rail fell upon her foot was that she put her right foot on the lever and release pedal and the side of the bed thereupon dropped and struck her right foot, which was still on the pedal. The pedal was underneath the bed and about 8 inches from the floor. The plaintiff did not observe anything out of the ordinary or unusual about the bed prior to the injury. She had agreed to pay compensation to the hospital for their services in attending the child. The plaintiff was at the hospital as a business invitee. The hospital was owned, operated, maintained and controlled by the defendant. The plaintiff sustained severe injuries, having continuous pain in her right foot, as well as pain up the right leg into the hip and into the lower back on through the buttock. At the time of the trial she had had two operations on the foot as a result of the injuries, had received more than 80 treatments from her doctors, and she had been required to wear seven casts at various times. It was stated that she was suffering from causalgia caused from the blow to the top of her foot. It was further testified that the painful condition might continue indefinitely, and that if the pain did continue a major operation would be necessary.

After the injuries were sustained, an examination of the bed showed that there was a broken safety spring coiled within itself above the trigger trip or lever, or pedal that released the side of the bed. The broken edges of the safety spring were slightly eroded and had dust particles on them. The safety spring, if in good working order, was a safety device to absorb the shock of the side of the bed coming down. The side rail on the bed in question would drop without the application of any upward pressure upon the rail. With a very slight amount of pressure on the pedal of the bed which was involved in the accident, the side rail would come down all of the way to within one and one-half inches of the pedal. After the injury the nurse on duty at the hospital stated, among other things, to the plaintiff, "Now, maybe they will get the beds fixed."

Appellant urges several grounds for reversal. ▇ The first contention is that the evidence is not sufficient to sustain the verdict. To this it is sufficient to say that there was a strong conflict in the evidence and it became a ques-

tion of fact for the jury to decide whether one or the other was negligent. There was in fact a conflict in testimony between the defendant's own witnesses as to what happened when one stepped upon the release pedal of a bed of similar construction in good operating condition. No evidence was offered by the defendant as to the maintenance or inspection of the beds and it was uncontradicted, that the safety spring was broken in the bed in question. A reading of the record of this case indicates that there was clear and substantial evidence to support the verdict and under such circumstances the verdict will not be disturbed.

The defendant caused to be introduced into evidence a bed of similar construction to the one in question. It was stipulated during the trial that the bed in evidence should have the same status as a piece of property involved in a view by the court and jury—they thereby had the right to take into consideration whatever they saw.

Where the appellant urges the contention of insufficiency of the evidence to sustain the findings of the jury, the rule is, "Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) As said in *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183], "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157]; *Wing* v. *Kishi*, 92 Cal.App. 495 [268 P. 483].)"

The next contention of defendant is that it was error to give the following instruction:

"RES IPSA LOQUITUR. 206. THE ACCIDENT EVENT DENIED. If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff namely: *That she was operating the side of defendant's hospital bed for the purpose for which it was intended and in a normal manner and that when so operated the side struck her foot which was then on the lever used in lowering the side of the*

*bed*, and if you should find that from that accidental event, as a proximate result thereof, plaintiff has suffered injury, you are instructed as follows: an inference arises that the proximate cause of the occurrence in question was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that ~~he~~ it did, in fact, exercise ordinary ~~the utmost~~ care and diligence or that the accident occurred without being proximately caused by any failure of duty on ~~his~~ its part.

"Given on Court's Motion
As substitute for requested 206B."
(Emphasis Included.)

All of the conditions necessary for the application of the doctrine of res ipsa loquitur were established.

(1) The accident was of a kind which ordinarily does not occur in the absence of negligence on the part of someone.

The defendant caused to be introduced into evidence a bed as an illustration of the mechanical operation of the bed in question. The jurors and the trial judge viewed the bed and its mechanical operation.

█ The jury was justified in finding and concluding that the accident would not have happened without negligence by someone. There was testimony that the safety spring had been broken for a considerable period of time. There was no testimony in behalf of the hospital that there was any proper inspection of the beds. An inference of negligence could well arise from the defendant's failure to discover such a visible defect as a broken safety spring on the bed. The bed, prior to the accident, had been on the defendant's premises and was in and under the direct control of the defendant. It is entirely proper to draw the inference that the safety spring upon the bed had been broken by the defendant's improper handling of the bed. (*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344].)

The evidence and common experience suggest strongly that there was negligence in the inspection or lack of inspection, and the maintenance of the bed by the defendant. "The plaintiff is not required to eliminate all other possible

causes, or inferences; and all that is needed is evidence from which reasonable men can say that on the whole it is more likely that there was negligence associated with the cause than that there was not." (Prosser, Law of Torts, 2d ed., p. 204; *Mintzer* v. *Wilson*, 21 Cal.App.2d 85 [68 P.2d 370].)

▉ (2) The accident was caused by an agency or instrumentality within the exclusive control of the defendant. It was apparently admitted by the defendant that the defendant and its agents were in exclusive control of the bed in question up to a time immediately prior to the accident. Defendant, however, contends that plaintiff operated the pedal and therefore she and not the defendant was in control at the time of the accident. ▉ "The requirement that the instrumentality must be under the management and control of the defendant, in the application of the doctrine of *res ipsa loquitur* does not mean, nor is it limited to actual physical control. It has been held to apply to the mere *right of control* of the instrument which causes the injury at the time of the accident." (*Metz* v. *Southern Pac. Co.*, 51 Cal.App.2d 260, 268 [124 P.2d 670].) " 'Control,' if it is not to be pernicious and misleading, must be a very flexible term. It is enough that the defendant has the right of control and the opportunity to exercise it, as in the case of . . . a landowner who permits visitors to come on his premises." (Prosser, Law of Torts, 2d ed., 205-206; *Van Horn* v. *Pacific Refining etc. Co.*, 27 Cal.App. 105 [148 P. 951].) It is enough that the defendant was in exclusive control at the time of the indicated negligence. (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436].

▉ (3) It must not have been due to any voluntary action or contribution on the part of the plaintiff. "Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident. Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible. . . . But the requirement may easily be misunderstood. The plaintiff is seldom entirely static, and it is not necessary that he be completely inactive, but merely that there be evidence removing the inference of his own responsibility." (Prosser, Law of Torts, 2d ed., 208.) This is true particularly where the plaintiff has done nothing abnormal and has used a thing only for the purposes for which it was intended. (*Baker* v. *B. F. Goodrich Co.*, 115 Cal. App.2d 221, 229 [252 P.2d 24].)

■ The evidence in this case was such that the jury could and apparently did believe that the injury was due to a broken safety spring on the bed in question. There was no evidence that the plaintiff was in any way responsible for the breaking of the safety spring. The jury, from ample evidence, determined in effect that the accident was more probably than not the result of negligence, and further determined that the defendant was the sole person who could have been guilty of that negligence. Such was all that was required. (*Rose* v. *Melody Lane*, 39 Cal.2d 481, 486 [247 P.2d 335]; *Escola* v. *Cola Cola Bottling Co.*, *supra*, 24 Cal. 2d 453, 458; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 517, 518 [203 P.2d 522].)

The jury was fully instructed on contributory negligence and told properly that if there was any negligence on the part of the plaintiff, which was a proximate cause for the injury, that then and in such event she could not recover.

■ Appellant complains of an instruction, a part of which was to the effect that "It is admitted that plaintiff was an invitee of defendant when in its hospital on the day of the accident." Appellant contends that the matter of the status of the plaintiff was one of the most contested issues at the trial and therefore it was error to give the instruction.

Paragraphs IV and V of plaintiff's complaint are substantially in the following language:

"IV

"That on or about the 6th day of January, 1952, the plaintiff, Bette J. Owens, was a business invitee at the White Memorial Hospital in the City of Los Angeles, County of Los Angeles, State of California, said hospital being then owned, operated, maintained and controlled by the defendants.

"V

"That on or about January 6, 1952, the plaintiff's daughter was a patient at said hospital and the plaintiff had agreed to pay compensation to said hospital for their services, and plaintiff was present at the White Memorial Hospital with the knowledge and consent of the defendants."

The defendant in its answer denied all of the allegations of the complaint excepting the matters set forth and contained in Paragraphs IV and V. ■ An allegation not denied is deemed admitted.

"Every material allegation of a complaint not controverted by answer must for the purposes of the action be taken as true and no evidence need be introduced in support of such allegation." (*Braverman* v. *Rosenthal*, 102 Cal.App.2d 30 [226 P.2d 617] ; Code Civ. Proc., § 462.)

Furthermore, a reading of the record does not disclose any evidence indicating that the plaintiff was anything other than a business invitee.

For the reasons herein set forth the judgment is affirmed.

White, P. J., concurred.

Doran, J., dissented.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1956.